# White v. Goodford Motor Co.

Feb. 1, 1944.

C. A. Noble for appellant.

Jesse Morgan for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Bruce White, was employed as an automobile salesman by the appellee, the Goodford Motor Company, from March, 1931, until May 19, 1941. On March 25, 1942, the Goodford Motor Company brought this action against appellant to recover $1,726.62. It alleged that it had advanced that amount to him in excess of the commissions earned by him during the period from October 8, 1936, to December 31, 1940. A statement of account covering 51 typewritten pages was filed with the petition, and it showed that the commissions earned by appellant during this period amounted to $17,205.66, and advancements made to him exceeded the commissions to which he was entitled by $1,726.62. The first paragraph of the answer was a traverse, and the second paragraph was a plea of accord and satisfaction. After the issues were completed the action, by agreement of the parties, was transferred to

the equity docket and referred to the master commissioner to hear proof. The commissioner found that the defendant was indebted to the plaintiff in the sum of $1,726.62, and recommended that a judgment for that amount be entered. The defendant filed exceptions to the commissioner's report, his exceptions were overruled, and judgment was rendered in favor of the plaintiff for the amount claimed in the petition. The defendant appeals.

Both in his pleadings and testimony, appellant relied upon an alleged settlement of the claim made in July, 1941, as a complete defense. There is no dispute as to the following facts. Appellant was employed by appellee in July, 1931, under a contract by the terms of which appellant was to receive a commission of 5 per cent. on sales of automobiles made by him. In the autumn of 1936 the contract was modified so as to allow appellant a commission of 6 per cent. on all cars sold, including those sold by other salesmen and by officers of the company. Other salesmen received a commission of 5 per cent., and this was deducted from appellant's commission. The parties operated under the modified contract until December 31, 1940, when it was discontinued and another contract was entered into by the terms of which appellant received a commission of 5 per cent. on all sales made by him. This contract remained in force until appellant's employment ceased in May, 1941. During the entire time appellant was employed by appellee he had a right to draw on his account with the company and advancements in cash were made to him when he needed or asked for the money, and settlements were to be made from time to time. Apparently a settlement was made when the original contract was modified in October, 1936. In July, 1941, D. H. Goodlette, president of the Goodford Motor Company, presented to appellant two statements, one covering the period from October 8, 1936, to December 31, 1940, showing that appellant was indebted to the company in the sum of $1,726.62, and one covering the period from January 1, 1941, to May 19, 1941, when appellant ceased working for appellee, showing that he was indebted to the company in the sum of $103.90, the excess of advancements over his commissions under the last contract. What occurred at this meeting is in dispute. Appellant testified that in July, 1941, Goodlette present-

ed to him two statements, one for $1,726.62 and one for $103.90. He told Goodlette he did not owe and would not pay the claim for $1,726.62, but would pay the claim for $103.90, the correctness of which he admitted. Goodlette said "all right," and appellant delivered to him a check for $103.90, payable to the Goodford Motor Company. On the face of the check this appeared: "This check is in payment of items as per statement following. Indorsement of payee will constitute a receipt in full when check is paid," and below that: "Bruce White account in full to date." When the check was presented for payment it carried this indorsement on the back: "Applied on account of Bruce White for the year 1941." Appellant testified that he intended the check for $103.90 to be a settlement in full of both accounts. D. H. Goodlette testified that he presented two accounts to White, one for $1,726.62, covering the period from October 8, 1936, to December 31, 1940, and one for $103.90, for the period from January 1, 1941, to May 19, 1941. White refused to pay the larger account, and Goodlette told him he would have to pay it. White admitted the correctness of the account for 1941 and offered to pay it. Goodlette accepted the check for $103.90 in payment of that account, but according to his testimony there was no intention on the part of either party at the time to treat the check as a settlement in full of both accounts.

We think that appellant's own testimony shows an intention on his part at the time the check was delivered to pay only the 1941 account, and that he understood the larger account was still in dispute. He did not challenge the correctness of that account, but claimed that under the October, 1936, contract he had a right to draw an amount sufficient to defray his living expenses regardless of the amount of his commissions. Goodlette, of course, denied that the 1936 contract contained such an unlimited provision and is substantiated by the nature of the advances made to appellant. Many of them were for purposes other than living expenses and they included monthly payments appellant was required to make on a house and lot he had purchased on the installment plan. We recognize the soundness of the rule announced in the authorities cited by appellant to the effect that when a claim is in dispute and the debtor delivers to his creditor a check which he clearly states is in full payment of the claim and the creditor collects the

check without objection, this constitutes a good accord and satisfaction. The issue in the present case, however, was whether or not the check for $103.90 was delivered by appellant and accepted by appellee with the understanding it was in full settlement of the disputed claim of $1,726.62. The appellant admitted he owed the $103.90 claim, and there was no reason why appellee should not accept a check for that amount in full payment of the claim without affecting the disputed claim. There were two distinct claims, one disputed and the other undisputed, arising under separate contracts. Payment of the undisputed claim did not discharge the disputed one. Shawnee Sanitary Milk Co. v. Fulkerson's Garage & Machine Shop, 258 Ky. 639, 79 S. W. (2d) 229.

The chancellor's judgment is fully sustained by the evidence, and it is affirmed.