Lloyd E. BENSON, Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Appellee.

No. 17580.

Court of Civil Appeals of Texas, Dallas.

Feb. 26, 1971.

Homer A. Brown, Brown, Brown & Bowen, Garland, for appellant.

John A. MacKintosh, Jr., Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

The Travelers Insurance Company brought this action against Lloyd E. Benson to recover the sum of $760 alleged to have been paid Benson through mistake and amounting to an overpayment of that sum in connection with the disposition of an automobile collision loss claim. The material antecedent facts are without dispute.

In June 1968 Travelers had in force and effect a policy of automobile insurance covering a 1968 Buick automobile owned by Benson. This policy afforded collision coverage with $100 deductible. On June 19, 1968 Benson's wife was involved in a collision while driving the insured vehicle. Benson asserted a claim under the policy. Due to the seriousness of the damages to the car Benson thought that the loss should be total. Travelers, acting through Property Damage Appraisers, secured a repair estimate covering the cost of repairing the damage, same being the sum of $1,106.69. Benson was told by Property Damage Appraisers that the cost of repairs would be in the neighborhood of $1,200. Benson did not have anyone inspect the automobile or render an estimate to him for the cost of repairs. Travelers elected to have the automobile repaired for the cost estimate. Bill Curry Buick Company did the repair work. Prior to the time the repairs were made the claim was processed in the office of Travelers by an adjuster, Guy B. McDonald. McDonald, in processing the necessary papers to pay the claim, stated that in reading the total column on the repair estimate it appeared to him that the figure read "$1,866.69" rather than "$1,106.69".

Mr. McDonald then applied the $100 deductible provision to the amount incorrectly read by him and issued a draft payable to Benson, and the Oak Cliff Bank & Trust Company, in the amount of $1,766.69. The draft for this amount, attached to a subrogation agreement, was mailed to Benson who received same and kept it in his possession for approximately two weeks before going to Bill Curry Buick Company to pick up his repaired car. He cashed the draft and paid Bill Curry Buick Company the sum of $1,106.69 upon his receiving his automobile. Prior to that time he had never had any contact with Adjuster McDonald. He admitted that the actual cost of repairs to the automobile was $1,106.69. At the time he negotiated the draft he knew that he had received $760 more than the actual cost of repairs, less the deductible. He did not call this fact to Travelers' attention. Subsequently, Travelers discovered the error and made claim on Benson to return the sum of $760. This suit was instituted following failure of Benson to return the money.

In answer to Travelers' suit Benson asserted the defense of accord and satisfaction. The case was tried to the court and a jury which found, in response to the only special issue submitted, that at the time Benson cashed the draft for $1,766.69 there was no good faith dispute between the parties as to what amount of money was actually owed by Travelers on account of the collision damage claim in question. Based upon this jury verdict, together with the undisputed facts, the trial court rendered judgment in favor of Travelers against Benson for $760.

In one of his primary points on appeal appellant contends that the trial court should not have submitted any issue to the jury because his defense of accord and satisfaction had been established, as a matter of law. We overrule this point.

Our Supreme Court in the recent case of Jenkins v. Henry C. Beck Company, 449 S.W.2d 454 (Tex.1970) had occasion to reiterate the elements which are necessary to conclusively establish the affirmative defense of accord and satisfaction: (1) there must be evidence of a new contract, express or implied, in which the parties agree to the discharge of existing obligation by means of the *lesser* payment tendered and accepted; (2) the evidence must establish an assent of the parties to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim; (3) the minds must meet and where resting in implication the facts proved must irresistibly point to such conclusion; (4) there must be an unmistakable communication to the creditor that the tender of the *lesser* sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation, such fact being made plain, definite and certain; (5) that the statement accompanying the tender of the sum *less* than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation; and (6) that the offer must be accompanied with acts and declarations which the creditor is "bound to understand".

To the same effect see the later case of George Linskie Co., Inc. v. Miller-Picking Corp., 463 S.W.2d 170 (Tex.1971).

We have carefully examined the entire record in this case and we are convinced that appellant has failed to meet his burden of establishing the necessary elements of his defense of accord and satisfaction. It is significant to note that the amount paid by appellee was greater and not lesser than the amount of money agreed by appellant to be the cost of repairs to the automobile. It cannot be said that there was an unmistakable communication between the parties to the effect that the tender of the draft was to constitute a new contract. Certainly it cannot be said that the tender of the draft by appellee was clear, full and explicit and not susceptible of any other interpretation. Appellant concedes that he was advised that the cost

of repairs would run about $1,200. He knew that he had a $100 deductible. He knew and realized when he received the draft for $1,766.69 that such was far in excess of the cost of repairs. The evidence establishes as a matter of law that appellee's adjuster made a mistake in reading the figures from the repair estimate. An examination of the repair instrument itself would substantiate such mistake of interpreting the figures therein contained.

Appellant argues that the answer of the jury to the only special issue submitted was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong.

■ At the time the draft was cashed appellant had been advised that the cost of restoring the automobile by repairs would be about $1,200. The bill for repairs amounted to $1,106.69 which he paid. Hence there was ample evidence to support the jury's answer to the effect that no good faith dispute existed, at the time the draft was cashed, concerning the amount owed on the claim. Appellant's argument that he thought the extra $760 was to pay for additional repair work is without merit for the obvious reason that at the time he cashed the draft he had not received the car and therefore he could not have known whether additional repairs would be required. Moreover, if the car had not been satisfactorily repaired it would be the obligation of Bill Curry Buick Company to perform whatever additional work might be required under its contract. We overrule appellant's point.

■ Appellant next contends that the judgment was improper because appellee had failed to establish grounds for recovery as a matter of law.

There is no dispute in the evidence concerning the amount of overpayment which was made the basis for the judgment rendered. This amount is arrived at by a simple mathematical calculation and being so established it was unnecessary for the trial court to submit a question to the jury to determine such amount.

■ The basis for appellee's cause of action was overpayment by mistake. Appellant argues that since the mistake was unilateral that recovery may not be had based upon such mistake unless same was induced by fraud, imposition, undue influence or betrayal of confidence on the part of the other party. While we agree with the general principle of law asserted by appellant concerning the necessity for mutuality of mistake as affording basis for relief in some instances, we cannot agree with appellant that such rule of law applies to this particular cause of action. Here the insurance company simply seeks to recover back money that it contends was erroneously paid to another and which the recipient has no legal right to retain.

It has been stated as a rule of law that if payments were made because of a serious mistake of fact by the insurer it is entitled to restitution unless it has agreed to assume the risk of mistake or there is some reason which makes it inequitable or inexpedient for restitution to be granted. In a comprehensive note in 167 A.L.R. 472 it is stated:

"The legal principles which the courts formulate as the basis of their holdings in cases involving the right of an insurer to restitution of payments made under a mistake are relatively simple and fairly well settled. They can be stated as follows:

(1) An insurer who made a payment under a mistake of fact may, as a rule, recover such payment, even if its mistake was due to lack of care, unless payee has so changed his position that it would be unjust to require a refund.

(2) This principle is subject to the limitation that no recovery can be had by the insurer where, at the time payment was made, there was some doubt as to the existence of the fact from which the obligation of the insurer arose or where

the mistake of fact related to a warranty in the original contract.

(3) An insurer which has made a payment under a mistake of law cannot recover back such payment."

Numerous cases throughout the United States are cited in support of this general principle of law. In Hodges Food Stores, Inc. v. Gulf Ins. Co., 441 S.W.2d 309 (Tex. Civ.App., Dallas 1969), we stated the rationale of the rule to be that money paid to another under the influence of a mistake of fact belongs, in equity and good conscience, to the person who paid it. See also Pilot Life Ins. Co. v. Cudd, 208 S.C. 6, 36 S.E.2d 860, 167 A.L.R. 463 (1945). Based upon this principle of law it has been held that where an insurance company pays more than it is obligated to pay, due to a mistake of fact, such sums may be recovered. Couper v. Metropolitan Life Ins. Co., 250 Mich. 540, 230 N.W. 929 (1930); Franklin Life Ins. Co. v. Ward, 237 Ala. 474, 187 So. 462 (1939).

The Supreme Court of Texas, in the early case of City Bank v. First National Bank, 45 Tex. 203 (1876) said:

"The general rule is that money, paid under a mistake of fact, may be recovered back, and that, too, although the party may have had the means of knowledge. * * * 'On general principles, mere negligence in making the mistake is not sufficient to preclude the party making it from demanding its correction. Such negligence does not give to the party receiving the payment the right to retain what was not his due, unless he has been misled or prejudiced by the mistake. If the loss had been incurred and become complete before the payment, he should not, in justice, be permitted to avail himself of the mistake of the other party to shift the loss upon the latter.' "

The same rule was followed by the Supreme Court in Alston and Hutchings v. Richardson, 51 Tex. 1 (1879).

Our Supreme Court in James T. Taylor, etc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371 (1960), stated the law to be that equitable relief will be granted against the unilateral mistake when the conditions of remedial mistake are present. Among these conditions are: (1) the mistake is so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; and (3) the mistake must have been made regardless of the exercise of ordinary care. See also Colvin v. Baskett, 407 S.W.2d 19 (Tex. Civ.App., Amarillo 1966).

We are of the opinion that these principles of law are applicable to the factual situation here presented. Accordingly, we overrule appellant's points.

We have carefully considered all of the points advanced by appellant and, finding the same not to reflect reversible error, they are overruled and the judgment of the trial court is affirmed.